IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

KENNETH A. SWANN,

      Plaintiff,

V.                               CIVIL ACTION NO. 3:04-0574

JOANNE BARNHART,
Commissioner of Social Security,

      Defendant.

## FINDINGS AND RECOMMENDATION

In this action, filed under the provisions of 42 U.S.C. §1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his application on November 1, 2002, alleging disability as a consequence of depression and back, neck and shoulder pain. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was fifty years of age and had obtained a ninth grade education. He has no past relevant employment experience. In his decision,

17

the administrative law judge determined that plaintiff suffers from "borderline intellectual capacity, major depressive disorder, personality disorder, arthralgia, and hypertension," impairments he considered severe. Concluding that plaintiff retained the residual functional capacity for a limited range of light level work and relying on Rule 202.10 of the medical-vocational guidelines[1] and the testimony of a vocational expert, the administrative law judge found him not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. At the hearing, plaintiff alleged restrictions on his abilities to lift, stand and walk due to a history of a broken leg, which he claims never healed,[2] and joint pain. He also testified he has gout which flares up about every three months. The record contains no reports documenting treatment for plaintiff's physical problems, consistent with his testimony that he cannot afford to see doctors,[3] and had been unable to obtain a medical card. In furtherance of his attempts to obtain medical care, plaintiff was examined by Dr. Jose Ricard on December 20, 2000. The form completed by this physician shows plaintiff's statement of incapacity/disability as involving only mental problems such as depression, bewilderment and weight loss without reports of physical impairments. On exam, however, plaintiff complained of arthritic pain as well as confusion, dizziness and sluggishness. Dr. Ricard diagnosed chronic depression but felt a brain tumor should be ruled out, and he opined that plaintiff would be unable to work until this was assessed. An MRI

---

[1] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

[2] Plaintiff testified this occurred in 1997 or 1998 but there is no evidence in the record confirming it, and he did not mention it to Dr. Nutter, the Commissioner's consultative evaluator.

[3] He was not asked whether he had attempted to go to any free or low cost clinics in the area and he had apparently never had to visit the emergency room, although he made reference to having done so when his gout flared up.

2

of the brain was performed February 12, 2001, and interpreted as showing a small left temporal lobe signal abnormality, but there was no indication that this represented a brain tumor.

Dr. Ricard examined plaintiff again on January 30, 2002, and observed cavities and absent teeth, ear pressure and pain in the cervical spine with flexion and extension. The diagnosis was generalized polyarthralgia, panic attacks and depressive neurosis. Dr. Ricard expressed the opinion that plaintiff would be unable to perform any work for one year.

The only other record of physical exam was that performed by Dr. Stephen Nutter on February 26, 2003. Plaintiff reported on this occasion that he had difficulty with neck, shoulder, back and leg pain as well as severe headaches three times per week and shortness of breath. Exam showed a normal gait, no evidence of discomfort in the sitting or supine positions, clear lungs and no evidence of shortness of breath on exertion or lying flat. Dr. Nutter did detect pain and tenderness in the shoulders, wrists and right elbow, and there was swelling and a mild bony deformity over the right wrist. Range of motion was reduced in the shoulders and wrists. There were no abnormalities of plaintiff's hands observed other than a mild bow of the right fourth metacarpal, indicative of an old fracture. Grip strength and hand function were considered normal. Muscle tone and strength in the upper extremities were also normal with no evidence of atrophy.

In the lower extremities, Dr. Nutter detected pain, tenderness and crepitus in the knees but without range of motion restriction. Muscle strength testing showed "giveaway weakness" at the hips, knees and ankles, although it was noted that plaintiff was able to walk on his toes, which this physician felt indicated that his ankle strength was likely full. There was no evidence of atrophy or sensory or reflex abnormalities.

3

Exam of the cervical spine revealed pain and tenderness in the paraspinal muscles and the spinous processes with range of motion restriction. "Minimal" tenderness was observed at the L4-5 level in the dorsolumbar spine with some limitation of motion. Straight leg raising was, however, normal and plaintiff was able to walk on his heels and toes, in tandem and to squat, although with complaints of leg pain upon squatting. Dr. Nutter diagnosed chronic cervical and lumbosacral strain without evidence of radiculopathy as well as arthralgia due to complaints of joint pain and findings of tenderness in some areas. The state agency medical advisors who reviewed this evidence concluded that plaintiff could perform a full range of medium level work. The administrative law judge reduced this to light level work but, given the medical evidence and plaintiff's daily activities as reported various places in the record, he determined that no further reduction was necessary.[4] He gave little weight to Dr. Ricard's opinions, noting they were unsupported by the few clinical findings he documented and by the rest of the record.

Evidence relative to mental impairments, which plaintiff testified were much more significant than his physical problems, shows that he has a history of treatment at the Prestera Center from 1994 to 2000 on a sporadic basis. He began regular treatment with an initial psychological evaluation on December 5, 2000, which produced a diagnosis of dysthymia, major depression, recurrent, moderate, and benzodiazepine abuse. Plaintiff was prescribed antidepressant and antianxiety medication. An evaluation four months later by a psychologist and by Dr. Sablay, his treating psychiatrist, in furtherance of his attempts to obtain a medical card, reflected he had a normal gait, was cooperative and displayed a normal mood, although he had slumped posture, slow

---

[4] At the hearing, the administrative law judge, after reviewing Dr. Nutter's findings, asked plaintiff's attorney what would keep plaintiff from performing light work. Counsel responded, "[w]ell, Your Honor, nothing physical... ."

speech and a flat affect. Immediate memory was considered deficient and the diagnosis was sedative, hypnotic or anxiolytic abuse, major depressive disorder, recurrent, severe, with psychotic features, and antisocial personality disorder. Plaintiff's global assessment of functioning ("GAF") was rated at fifty, consistent with serious symptoms.[5] Despite this assessment, the examiners noted that with stabilization of plaintiff's symptoms "there is no reason to believe he would not be able to sustain employment as he has done in the past." They felt improvement would occur within six months.

Seven months later, on November 26, 2001, Dr. Sublay completed a psychiatric review and observed a mildly depressed mood and appropriate affect, and opined plaintiff's recurrent major depression was at a moderate level. Shortly after this, he reported to the Department of Health and Human Resources that plaintiff's incapacity/disability was expected to last maybe six months and listed employment limitation as "depressed, unmotivated?, anxious." Another psychiatric review by this physician on November 1, 2002, was essentially the same as the previous year. The most recent review, from November 2003, was more detailed and reflected plaintiff's complaint of being unable to remember anything. Mental status exam revealed depressed mood, appropriate affect and mildly decreased concentration, but there was no indication of memory problems. Dr. Sablay again diagnosed dysthymia as well as recurrent major depression, but he noted that the latter was of mild to moderate severity.

The Commissioner sent plaintiff to Lisa Tate, M.A., for a psychological evaluation on February 13, 2003. She observed a depressed mood and restricted affect although memory and

---

[5] A global assessment from fifty-one to sixty denotes moderate symptoms, however. See, Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., American Psychiatric Association, 1994 at 32.

concentration were considered adequate. Ms. Tate's impression was major depressive disorder with anxious features, sedative, hypnotic or anxiolytic abuse, alcohol abuse in sustained full remission, and borderline intellectual functioning.  Plaintiff's reported daily activities consisted mostly of watching television, but he also indicated he dusted, washed dishes, took out the trash and shopped, though not every day.  Monthly, he visited his niece and nephew and vacuumed.  Ms. Tate did not assess plaintiff's mental residual functional capacity; however, the state agency medical advisors concluded he would be moderately limited in his abilities to understand, remember and carry out detailed instructions; maintain attention and concentration; work in coordination with others without being distracted by them; complete a normal workday and workweek without interruption from psychological symptoms and maintain a consistent pace; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, respond appropriately to changes in the work setting.

The administrative law judge found plaintiff limited to simple, repetitive job tasks with minimal interaction with others based on his determination that plaintiff had moderate limitations of his social functioning and concentration, persistence and pace.  Though noting that Dr. Sablay had assessed plaintiff's symptoms as "serious" in April of 2001, the administrative law judge observed that plaintiff's condition did improve by November of that year. Plaintiff's condition has apparently continued to improve as Dr. Sablay's most recent assessment shows, as noted, this condition was only mild to moderate in severity.  After a review of the entire record, the Court concludes that the administrative law judge's findings with respect to plaintiff's mental and physical residual functional capacity are supported by substantial evidence.

While plaintiff alleged significant limitations on his activities due to pain and depression, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that his testimony was only partially credible. In making this finding, he identified inconsistencies between plaintiff's reports to physicians and his assertions at the hearing, his admission that his mental status had improved with treatment and his testimony as to daily activities, which was completely inconsistent with what he reported in documents filed during the processing of his application as well as with assertions he made to examining physicians. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of his functional capacity and overall medical condition, a vocational expert testified that there were significant numbers of light and sedentary jobs in the national economy which plaintiff could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner should be affirmed.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

8

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.


DATED: July 29, 2005


MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE


9